UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-185(DSD/JMM)

Thimbleberries, Inc.,

Plaintiff,

v.

**ORDER**

C & F Enterprises, Inc., and
The Mark Group, Inc.,

Defendants.

Laura J. Hein, Esq., Ann K. Bloodhart, Esq. and Gray, Plant, Mooty, Mooty & Bennett, 3400 City Center, 33 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

Brian A. Wood, Esq., Sridevi S. Anwar, Esq. and Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402 and Patricia A. Felch, Esq., Banner & Witcoff, 10 Wacker Drive South, Chicago, IL 60606, counsel for defendants.

This matter is before the court on plaintiff's motion for a preliminary injunction and defendants' motion for judgment on the pleadings. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court denies defendants' motion and grants plaintiff's motion.

FILED 6-8-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. ____________
Deputy Clerk's Initials ______

**BACKGROUND**

Plaintiff Thimbleberries, Inc. ("Thimbleberries") and its owner, founder and chief designer, Lynette Jensen ("Jensen"), have designed and sold quilt patterns and fabric designs since 1988. In 1989, Jensen created a quilt pattern depicting a Christmas wreath adorned with a bow, called the "Countryside Wreath." Jensen and Thimbleberries displayed the pattern at quilting shows in Denver and Houston in 1989, and the design also appeared in the book America's Best Quilting Projects, published by Rodale Press in 1993. In January 2001, Thimbleberries obtained a copyright for the design.

Thimbleberries markets the "Countryside Wreath" pattern in quilt shops across the United States and around the world. Quilters can also obtain the pattern through quilting books and magazines. However, Thimbleberries has never licensed its patterns or designs for use in mass-produced products. Therefore, when Jensen saw a nearly identical copy of her original wreath pattern depicted on table linens marketed in a Charles Keath ("Keath") catalog in October of 2000, she contacted a lawyer, who demanded that Keath cease all sales of its allegedly infringing tablecloth and table runner designs. Thimbleberries subsequently learned that C & F Enterprises ("C & F") manufactured the linens, and through its lawyers, it demanded that C & F also cease all manufacture and sale of the allegedly infringing products. Both Keath, a division

of The Mark Group, and C & F (collectively "defendants") refused to stop selling the table linens.

Based on defendants' refusal to cease production and sales, Thimbleberries filed this copyright infringement lawsuit and now moves for a preliminary injunction. Defendants deny that their table runner and tablecloth infringe on Thimbleberries' design and have filed a cross-motion for judgment on the pleadings.

**DISCUSSION**

Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law. National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 428 (8th Cir.), cert. denied, 510 U.S. 861 (1993)(quoting Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters, 627 F.2d 853, 855 (8th Cir. 1980)). The court must accept as true all facts pled by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. Id.

In evaluating a motion for preliminary injunction, the court considers the four factors set forth by the Eighth Circuit in Dataphase Systems, Inc. v. CL Systems, Inc.: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and the harm that the relief would cause

to the other litigants; (3) the likelihood of the movant's success on the merits; and (4) the public interest. 640 F.2d 109, 112-114 (8th Cir. 1981). The court weighs the four factors to determine whether injunctive relief is warranted. See id. at 113; West Publ'g Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987). While no one factor is determinative, the likelihood of success on the merits predominates in a copyright infringement case. E.F. Johnson Co. v. Uniden Corp., 623 F. Supp. 1485, 1491 (D. Minn. 1985) (citing 3 M. Nimmer, Nimmer on Copyright, § 14.06[A] n.6.1). Once the movant has established a likelihood of success on the merits, irreparable injury is presumed. West Publ'g, 799 F.2d at 1229. Accordingly, the court turns first to an analysis of Thimbleberries' probability of success on the merits of its copyright infringement claim.

**A. Likelihood of Success on the Merits**

To prevail on a copyright infringement claim, a plaintiff must prove: (1) ownership of a valid copyright and (2) copying of its copyrighted work by defendant. Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939, 941 (8th Cir. 1992). To establish ownership of a valid copyright, the plaintiff must prove that the material is original, that it can be copyrighted, and that all statutory formalities have been complied with. Lakedreams v. Taylor, 932 F.2d 1103, 1107-08 (5th Cir. 1991). To establish copying, the plaintiff generally must show that the defendant had access to the

material and that there is a substantial similarity between the two works. Moore, 972 F.2d at 941-42.

**1. Validity of the Copyright**

The United States Copyright Office issued certificate VA 1-023-787 to Thimbleberries for the Countryside Wreath pattern on January 2, 2001. Defendant correctly notes that because Thimbleberries first published the pattern in 1989, the registration certificate cannot serve as prima facie evidence of the validity of Thimbleberries' copyright. 17 U.S.C. ¶ 410(c). However, Thimbleberries' failure to obtain a certificate of registration within five years after the first publication does not render the copyright invalid. Rather, it merely eliminates the presumption of validity and gives the court discretion to decide what evidentiary weight to accord the registration certificate in judging whether plaintiff has established the requisite originality and protectability of its work. Id.; see also Cameron v. Graphic Mgmt. Assocs., Inc., 817 F. Supp. 19, 23 (E.D. Pa. 1992).

Defendants do not directly attack the validity of Thimbleberries' copyright, and in light of a reliable registration certificate, the court has no reason to question validity. Defendants suggest nonetheless that the idea of expressing a wreath in a pattern of squares and triangles may enjoy no copyright protection whatsoever, but that even if it does, such protection extends only to the "particular compilation of public domain

squares, 90-degree triangles and border-strips in the particular colors, dimensions, background quilting stitches, borders and contrasting bow and wreath designs originally selected, coordinated and arranged by Plaintiff." (Def. Mem. Opp'n Prelim. Inj. at p. 3.) Otherwise stated, defendants argue that protection of Thimbleberries' quilt pattern is limited or even precluded under the doctrines of merger and scenes a faire.

Under the merger doctrine, a court will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way. Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc., 114 F. Supp. 2d 856, 865 (D. Minn. 2000). Under the related doctrine of scenes a faire, a court will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea rather than from the creative efforts of the designer. Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). The Ninth Circuit Court of Appeals has noted that "there is some disagreement among courts as to whether these two doctrines figure into the issue of copyrightability or are more properly defenses to infringement." Id.

The Eighth Circuit has not addressed the issue of whether the merger/scenes a faire analysis affects copyright validity, but Nimmer counsels that these doctrines are best applied as defenses to infringement rather than challenges to the validity of the

copyright itself. 4 M. Nimmer & D. Nimmer, Nimmer on Copyright, §§ 13.03[B][3], at 13-69 through 70 and 13.03[B][4], at 13-73 (2001); see also Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991) (holding that the merger doctrine relates to infringement, not copyrightability); Reed-Union Corp. v. Turtle Wax, Inc., 77 F.3d 909, 914 (7th Cir. 1996) (explaining why the doctrine of scenes a faire is separate from the validity of a copyright); accord, Ets-Hokin, 225 F.3d at 1082. Regardless of where the analysis occurs, the court believes that neither doctrine is applicable to this case.

The merger doctrine is based on 17 U.S.C. § 102(b), which states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." Under the merger doctrine, copyright protection may be denied where the idea -- in this case, the notion of arranging public domain shapes in a wreath pattern for quilting -- is inseparably tied to the expression of that idea -- here, the particular arrangement created by Lynette Jensen for Thimbleberries. Janel Russell Designs, 114 F. Supp. 2d at 865; 4 Nimmer § 13.03[B][3]. Similarly, under the scenes a faire doctrine, copyright protection may be precluded where the work contains features which are indispensable or standard for such

work. Ets-Hokin, 225 F.3d at 1082. The rationale behind both doctrines is that there should be no monopoly on the underlying idea. Id.

The court agrees with defendants' position that Thimbleberries is not entitled to a monopoly on the concept of arranging squares and triangles in a wreath-shaped pattern. However, as Thimbleberries easily demonstrates, the pattern which it seeks to protect represents only one of many ways to express a quilted wreath design. Thimbleberries' counsel presents by affidavit at least nine other wreath patterns for quilters, all of which markedly differ from the Countryside Wreath not only in their arrangement of squares and triangles (and in other instances, octagons and rectangular bars), but also in the shape and design of the center opening and the presence, design and positioning of the bow and other decorative additions. (Hein Aff. Exh. B.)

This proliferation of varied patterns provides more than sufficient evidence that Thimbleberries has utilized the minimal degree of creativity required to obtain copyright protection. Feist Publ., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991) (quoting Nimmer, § 1.08[C][1]) ("To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be.") Moreover, the variety of patterns reveals

that Thimbleberries' particular arrangement of public domain shapes is not at all compelled by the underlying idea. For this reason, the court must reject defendants' contention that the merger doctrine applies in this case. Cf. Ellis Educ. Equip, Inc. v. Tekservices, Inc., 903 F. Supp. 1350, 1360 (D. Neb. 1995)(holding that candy cane design of die used in paper cutting machine was not entitled to copyright protection because there were limited ways in which to depict a candy cane for a paper cutting machine and still be able to express the idea). Accordingly, the court concludes that for purposes of obtaining a preliminary injunction, Thimbleberries has established the validity of its copyright.

**2. Copying by Defendants**

Having established its ownership of a valid copyright, Thimbleberries must also prove that defendants copied its protected work. Because direct evidence of copying is rarely available, a plaintiff generally must show that the defendant had access to the copyrighted material and that the accused work is substantially similar to the copyrighted work. Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977).

**a. Access**

Thimbleberries may establish access by showing that defendants had a "reasonable possibility" of viewing the Countryside Wreath pattern. Moore, 972 F.2d at 942. Thimbleberries contends that

defendants clearly had access to its wreath pattern, since it was featured at two international quilt shows in 1989 and has been available in quilt stores and quilting books and magazines since that time. While it is true that access can be inferred where the copyrighted work has been widely disseminated, see, e.g., Odegard Inc. v. Costikyan Classic Carpets, Inc., 963 F. Supp. 1328, 1336 (S.D.N.Y. 1997), Thimbleberries bare assertions of dissemination do not satisfy the access requirement.

First, Judy Short, the designer of defendants' allegedly infringing work asserts that she did not attend either of the 1989 quilting shows, does not frequent quilting shops and has not seen the Rodale press volume. (Short Aff. ¶¶ 2-5.) The court finds dubious Short's assertion that she is a professional quilt pattern designer, yet she does not visit quilting stores. Nonetheless, Thimbleberries has provided no specific information regarding the geographic distribution of its Countryside Wreath pattern, therefore it is far from clear that the pattern was displayed or sold in any location that Short may have visited during the relevant time frame. See, e.g., McRae v. Smith, 968 F. Supp. 559, 563-64 (D. Colo. 1997) (holding that regional dissemination of 500 copies of and performance in places where defendants were not located is inadequate to establish access). Further evidence obtained during discovery may satisfy this access requirement, but

the court cannot base preliminary injunction on this meager record of dissemination.

Although Thimbleberries has not satisfied the access requirement through proof of dissemination of its work, it can still establish access if the similarity between its copyrighted pattern and the allegedly infringing work is sufficiently "striking." Moore, 972 F.2d at 941 n.1. Therefore, Thimbleberries must establish not only substantial similarity but also striking similarity.

**b. Similarity**

The Eighth Circuit endorses a two-step approach in determining substantial similarity. First, an "extrinsic" analysis is performed to determine whether the general idea of the two works is substantially similar. Moore, 972 F.2d at 945; Krofft Television, 562 F.2d at 1164. In applying the extrinsic test, the court considers such criteria as the type of artwork involved, the materials involved, the subject matter and the setting for the subject. Krofft Television, 562 F.2d at 1164. In cases such as this, where the extrinsic elements of the two wreath-shaped quilt patterns are unquestionably similar, the court must then perform an "intrinsic" analysis to determine whether there is similarity of expression. Id.

The intrinsic test is a subjective test, where the court examines the works "to ascertain if they are so dissimilar that

ordinary, 'reasonable minds [can]not differ as to the absence of substantial similarity in expression.'" Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987) (quoting Litchfield v. Spielberg, 736 F.2d 1352, 1355-56 (9th Cir. 1984). Judge Learned Hand described the test as whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960). In this case, the court concludes that a reasonable observer would easily recognize the similarities between the two wreath-shaped patterns as not only substantial but striking.

To the ordinary observer, the two designs are, for all practical purposes, identical: the shapes of the designs are identical, consisting of sixteen exterior points of 45 degrees and six exterior points of 90 degrees; the number and placement of squares and triangles is virtually the same, except for four triangular pieces flanking the contrasting bow which have been removed from the defendants' design; and finally, the number of pieces, their scale and the proportions used in both designs are identical. For example, both patterns utilize six square pieces and eight triangular pieces, arranged the same way, to comprise the bow, which is placed in the identical location on the wreath. Most telling is the nearly identical arrangement of squares and triangles to create both the exterior shape of the wreath and the

center hole design. The striking similarities between these two works stands in sharp contrast to the notably different wreath patterns created by other quilt pattern designers. (Hein Aff. Exh. B.)

Defendants contend nonetheless that differences in fabric color, border trim and dimension, plus the absence of the four triangles flanking the bow, result in an "entirely different" design from the Countryside Wreath pattern. To the contrary, the court finds that the subtle distinctions in color and fabric choice, background quilting stitches and border trim are irrelevant to the similarity determination because these features do not constitute the subject matter of the copyright. Moreover, defendant's "lengthy recitation of differences ... while requiring considerable ink to describe, do little to lessen the overwhelming impression" that defendants' pattern is an appropriation of Thimbleberries' Countryside Wreath design. Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1004 (2nd Cir. 1995); see also Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 62 (1st Cir. 2000) ("[D]efendant cannot copy the intricate patterns and juxtapositions of the Blanket Stitch design virtually line-for-line and then escape liability for infringement merely by changing the color and saying this necessarily destroys any substantial similarity.")

Finally, the court concludes that the two works are so strikingly similar as to preclude the possibility that defendant's designer independently arrived at the same result. This conclusion is based not only on the remarkable similarities between the two wreath patterns, but also on one specific difference -- the absence of the four triangles flanking the bow. The court finds it suspicious that the designer's original pattern included at least two, if not all four of the triangles, but that these triangles were removed from the design before it was incorporated into the mass-produced table linens. This subtle change in the pattern suggests defendants may have deliberately eliminated elements so as to avoid a determination of copying. Atari, Inc. v. North American Philips Consumer Elec. Corp., 672 F.2d 607, 619 (7th Cir. 1982), superseded on other grounds by statute, (viewing such "superficial changes" as "an attempt to disguise an intentional appropriation."). For these reasons, the court believes that Thimbleberries can likely establish the requisite degree of similarity to sustain a finding of copying and thereby prevail on its copyright infringement claim. Consequently, defendants are not entitled to judgment as a matter of law, therefore the motion for judgment on the pleadings is denied.

**B. Remaining Dataphase Factors**

Thimbleberries has made a prima facie showing of copyright infringement, therefore it is entitled to a presumption of irreparable harm. West Publ'g, 799 F.2d at 1229.

With respect to the balance of hardships between the movant and nonmovant, this factor is generally regarded as insignificant in a copyright infringement action. E.F. Johnson, 623 F. Supp. at 1491. In this case, the economic harm posed to Thimbleberries' by the unlicensed mass-production of its wreath design is obvious and the court agrees that any harm to defendants pales in comparison. Indeed, "[a] willful infringer which seeks to profit by copying others' creative ideas should not be heard to complain that its interests will be disturbed by an injunction." Id. at 1504 (citing Helene Curtis Indus. v. Church & Dwight Co., 560 F.2d 1325, 1333 (7th Cir. 1977), cert. denied, 434 U.S. 1070 (1978).

Finally, regarding the public interest, courts have long recognized that:

> [i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work. The interest which the copyright laws are designed to serve is the public interest in encouraging "individual effort and creativity by granting valuable enforceable rights." A preliminary injunction enjoining copyright infringement serves the public interest by furthering the goals of individual effort and fair competition.

E.F. Johnson, 623 F. Supp. at 1491 (quoting Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983); Atari, Inc. v. North American Philips Consumer Elec. Corp., 672 F.2d 607, 620 (7th Cir. 1982)) (other citations omitted).

In sum, analysis of each Dataphase factor counsels in favor of the issuance of a preliminary injunction. Accordingly, the court grants Thimbleberries' motion for preliminary injunction.

**C. Bond Amount**

Under Federal Rule 65(c), the court is required to determine the amount of security that the preliminary injunction movant must give "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Given the likelihood that Thimbleberries will succeed on the merits of its copyright infringement claim and the minimal chance that defendants will suffer significant cognizable harm from the issuance of an injunction, the court concludes that a nominal bond of $1,000.00 is appropriate in this case.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for judgment on the pleadings is denied.

2. Plaintiff's motion for a preliminary injunction is granted.

3. Defendants C & F Enterprises, Inc. and The Mark Group, Inc., along with their officers, directors, agents, servants, employees, successors, assigns, and all those controlled by them, or in active concert or participation with them, are preliminarily enjoined from reproducing, copying, colorably imitating, manufacturing, authorizing the manufacture of, displaying, distributing, promoting, advertising, offering for sale, selling, or otherwise using in any way without the consent of Thimbleberries, Inc. its registered "Countryside Wreath" design.

4. Defendants C & F Enterprises, Inc. and The Mark Group, Inc. shall send written notice, approved by this court, to each manufacturer, printer, supplier, distributor, wholesaler and retailer or other such party who has received infringing products, with a copy of such written notice to be furnished to Thimbleberries, Inc., requesting the recipient to return the infringing products to defendants and informing the recipient of the injunction and that any further use or sale of the infringing products will constitute a violation of court order.

5. This injunction will not take effect until Thimbleberries posts a bond or provides other security in the amount of $1,000.

Dated: June 8, 2001

David S. Doty, Judge
United States District Court